■ In the Matter of the Dissolution of CLEVER INNOVATIONS, INC. CHRISTOPHER P. DOOLEY, Appellant; GWEN M. NIELSEN, as Administrator of the Estate of PAUL S. NIELSEN, Deceased, Respondent. (And Another Related Proceeding.) [941 NYS2d 777]—

Spain, J. Appeal from an order of the Supreme Court (Williams, J.), entered September 1, 2010 in Saratoga County, which, among other things, granted respondent's application, in two proceedings pursuant to Business Corporation Law article 11, to direct the judicial dissolution of Clever Innovations, Inc.

In 2001, Paul S. Nielson (hereinafter decedent) formed Clever Innovations, Inc. (hereinafter the company), became the company's sole shareholder and director, and elected his now widow, respondent, as vice-president and treasurer. The couple ran the company from their home and respondent handled its banking and financial affairs. In 2002, the company issued 100 shares of stock to petitioner, thereby granting him a 50% share in the company. According to the company records, petitioner was never formally elected as an officer or director, but he shared with decedent in its day-to-day operation, drawing a salary in addition to dividends.

By all accounts, the company was extremely profitable. In 2009, decedent died unexpectedly and without a will. His shares became part of his estate, administered by respondent.[1] Thereafter, the relationship between respondent and petitioner quickly deteriorated; respondent refused to accept petitioner's assertion that he was an officer of the company. The company's bank froze its account, presumably because of the apparent dispute over who was authorized to act on behalf of the company. In May 2009, the parties met and agreed to an interim arrangement by which petitioner would operate the company's business, keeping respondent apprised of all financial transactions, while the parties worked toward negotiating a sale of the estate's one-half interest to petitioner.

Instead, a month later, petitioner commenced a proceeding alleging a deadlock between shareholders and seeking dissolution

---

1. Through intestacy, half of the shares—or their value—will pass to respondent and the other half to decedent's children from a prior marriage (see EPTL 4-1.1 [a] [1]).

of the company pursuant to Business Corporation Law § 1104. Petitioner also opened a new bank account for the company, funded it with $280,000 from company customers, redirected the company's mail to be delivered to his home instead of respondent's and ignored her communications regarding negotiating a sale of the estate's interest in the company. By August 2009, respondent gave up attempting to negotiate with petitioner and she commenced a counter proceeding, based on petitioner's alleged oppressive conduct, seeking—on behalf of the estate—a mandatory buyout of its shares for their fair value (*see* Business Corporation Law §§ 1104-a, 1118; *Matter of Wiedy's Furniture Clearance Ctr. Co.*, 108 AD2d 81, 84 [1985]). Petitioner moved for summary judgment. Supreme Court denied petitioner's motion and instead granted respondent's application, ordering dissolution of the company pursuant to Business Corporation Law § 1104-a and ordering petitioner to purchase the estate's shares. Petitioner appeals, and we affirm.

Although both parties seek to have their business relationship terminated, they invoke different grounds and seek very different relief. Petitioner maintains that the parties were deadlocked, thereby warranting dissolution of the company pursuant to Business Corporation Law § 1104. That statute permits judicial dissolution where "shareholders are so divided that the votes required for the election of directors cannot be obtained" (Business Corporation Law § 1104 [a] [2]), or when "there is internal dissension" such that "dissolution would be beneficial to the shareholders" (Business Corporation Law § 1104 [a] [3]). Under such circumstances, the company would be dissolved and its assets distributed among the shareholders (*see* Business Corporation Law § 1111). Here, petitioner failed to set forth a prima facie case that the shareholders were deadlocked. Although the parties were experiencing disagreement and, while respondent is acting on behalf of the estate, each controls 50% of the company's shares, petitioner does not assert that an election was held or demonstrate that a deadlock was harming the shareholders. Rather, the record demonstrates instead that the parties had met and agreed upon an interim arrangement for operating the company, but that the arrangement was never fully implemented due to petitioner's unilateral decision to act in contravention of it by filing a petition for dissolution. Under these circumstances, Supreme Court properly denied petitioner's motion for summary judgment seeking dissolution of the company pursuant to Business Corporation Law § 1104 (*see Matter of Nelkin v H. J. R. Realty Corp.*, 25 NY2d 543, 549 [1969]; *Matter of Fazio Realty Corp.*, 10 AD3d 363, 365 [2004]).

Respondent, on the other hand, invoked Business Corpora-

tion Law § 1104-a, which provides a mechanism for shareholders of at least 20% of the outstanding shares of a nonpublicly traded corporation to petition for its dissolution when those in control of the corporation engage in illegal, fraudulent or oppressive actions toward the complaining shareholders or misappropriate corporate assets (*see* Business Corporation Law § 1104-a [a]; *Matter of Kemp & Beatley [Gardstein]*, 64 NY2d 63, 70 [1984]). Oppression has been defined as conduct of a controlling shareholder[2] that substantially defeats expectations that, viewed objectively, " 'were both reasonable under the circumstances and . . . central to the [oppressed shareholder's] decision to join the venture' " (*Matter of Upstate Med. Assoc.*, 292 AD2d 732, 733 [2002], quoting *Matter of Kemp & Beatley [Gardstein]*, 64 NY2d at 73). Where oppressive conduct is found, it falls to the discretion of the courts to consider the totality of circumstances surrounding the corporation and to determine whether a remedy other than dissolution constitutes a feasible means of satisfying the rights and interests of the shareholders (*see* Business Corporation Law § 1111 [b] [2]; *Matter of Kemp & Beatley [Gardstein]*, 64 NY2d at 73-74) or whether an alternate remedy is appropriate such as—as the court awarded here—a forced buy-out (*see Matter of Wiedy's Furniture Clearance Ctr. Co.*, 108 AD2d 81, 84 [1985]).

We hold that petitioner's admitted conduct in operating the company to the exclusion of respondent substantially defeated the estate's reasonable expectations for cooperation and disclosure of relevant business information between the parties (*see Matter of Kemp & Beatley [Gardstein]*, 64 NY2d at 71; *Matter of Upstate Med. Assoc.*, 292 AD2d at 733; *Matter of Wiedy's Furniture Clearance Ctr. Co.*, 108 AD2d at 84). Given petitioner's unwillingness to either negotiate a sale of the estate's shares or to include respondent in the operation of the company, we hold that Supreme Court properly determined that the estate established the "special circumstances" necessary to invoke Business Corporation Law § 1104-a. Further, we reject petitioner's assertion that he was entitled to a hearing on this issue; a hearing is required only when allegations contained in the pleadings present issues of fact (*see* Business Corporation Law § 1109; *Matter Carrabasset Sq. Mgt. Corp.*, 90 AD3d 1279, 1279-1280 [2011]). Here, the only factual issue in dispute is whether, despite the absence of an official appointment, petitioner had become an officer of the company. As this fact is not material to

---

**2.** The protections of Business Corporation Law § 1104-a extend to 50% shareholders who can demonstrate oppression (*see Matter of Cristo Bros.*, 64 NY2d 975, 976-977 [1985]).

the issue of whether petitioner—a 50% shareholder—engaged in oppressive conduct, and given that he apparently never requested a hearing, we find that Supreme Court was not required to hold one (*see Matter Carrabasset Sq. Mgt. Corp.*, 90 AD3d at 1279-1280; *Matter of Quail Aero Serv.*, 300 AD2d 800, 803 [2002]; *Matter of Wiedy's Furniture Clearance Ctr. Co.*, 108 AD2d at 84).

Finally, recognizing that where a petitioner has demonstrated entitlement to dissolution pursuant to Business Corporation Law § 1104-a, "[a] court has broad latitude in fashioning alternative relief," we hold that Supreme Court did not abuse its discretion in directing a buyout of the estate's interest in the company (*Matter of Kemp & Beatley [Gardstein]*, 64 NY2d at 74; *see Matter of Wiedy's Furniture Clearance Ctr. Co.*, 108 AD2d at 85). It is undisputed that the parties no longer desired to continue in business together, but it is also clear from the record that, had they reached agreement on a price, petitioner would have purchased the estate's shares. With decedent's passing, petitioner maintained the primary relationship with the company's customers and, considering his actions designed to move the operation of the company beyond respondent's reach, Supreme Court was justified in finding that, through dissolution, petitioner seeks to avoid paying the estate the fair value of its shares while personally continuing to profit by operating the company's business either individually or through a new corporation. Under these circumstances, we cannot say that Supreme Court abused its discretion in ordering the extraordinary remedy of a forced buyout (*see* Business Corporation Law § 1118 [a]; *Matter of Kemp & Beatley [Gardstein]*, 64 NY2d at 75; *Matter of Wiedy's Furniture Clearance Ctr. Co.*, 108 AD2d at 85).

Mercure, A.P.J., Lahtinen, Stein and McCarthy, JJ., concur. Ordered that the order is affirmed, with costs.